# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED

May 21, 2021

Nathan Ochsner, Clerk of Court

| | |
|---|---|
| United States of America<br>v.<br><br>CLARENCE CHRISTOPHER CHAMBERS<br><br>*Defendant(s)* | )<br>)<br>)  Case No. **4:21mj1168**<br>)<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  between July 14 and Sept. 2, 2019  in the county of  Harris  in the Southern District of Texas, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. § 1591(a)(1), (b)(2) and (c) - Sex Trafficking of Children | the defendant knowingly, recruited, enticed, harbored, transported, provided, obtained, and maintained by any means, in and affecting interstate or foreign commerce, Minor Victim 1, (who had attained the age of 14 years but had not attained the age of 18) knowing and in reckless disregard of the fact that Minor Victim 1 had not attained the age of 18 years and that Minor Victim 1 would be caused to engage in a commercial sex act. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Juanae Johnson, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  May 21, 2021

_____
Judge's signature

City and state:  Houston, Texas         Hon. Dena Hanovice Palermo
*Printed name and title*

# AFFIDAVIT OF PROBABLE CAUSE

I, Agent Juanae J. Johnson, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a criminal complaint charging Clarence Christopher CHAMBERS with violations of Title 18 U.S.C. §1591(a)(1), (b)(2), and (c), sex trafficking of children.

2. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations (HSI) assigned to the Houston, Texas office. I have been so employed since August of 2004. I have been assigned to the Human Trafficking Rescue Alliance since 2017. Prior to this assignment, I was assigned to the Cyber Crimes Investigations Group where I was tasked with investigations related to the sexual exploitation of children. During this time, I investigated more than 100 cases involving the sexual exploitation of children.

3. I have received specialized training in the sexual exploitation of children, international and domestic sex trafficking, computer evidence handling, and other police matters, and have participated in various HSI operations involving the enforcement of sex trafficking as defined in 18 U.S.C. § 1591(a). I have also participated in the execution of numerous search warrants most of which involved child exploitation and/or child pornography offenses.

4. As a result of the above-mentioned training and experience, I learned that people who are involved in human trafficking, the promotion and compelling of prostitution, the sex trade, and sexual exploitation of individuals, often correspond with potential victims, co-conspirators, possible customers, and contacts via the internet and cellular phone technology. The business of human trafficking, prostitution, and sexual exploitation is often conducted through the use of cellular phones, internet messages, emails, digital data transfers and the like. This business often includes correspondence such as open offers, requests, offers for sale or trade, pictures and videos, audio recordings, etc. I have also obtained numerous search warrants related to these offenses.

5. Based on my training and experience, individuals who engage in criminal activities, such as prostitution, child prostitution and child sex trafficking, often utilize cellular

1

phones to maintain constant contact with victims, verify a victim's location through geographic location telephone applications, and to restrict a victim's communication.

6. A person who commits sex trafficking benefits financially when they recruit or harbor adults or children and manipulate, coerce, and/or force both the children and the adults to engage in commercial sex acts or prostitution for money. Based on my experience and training, adult and child victims of sex trafficking are overwhelmingly women, rather than men. Individuals who engage in prostitution and sex trafficking often use violence and various forms of manipulation to maintain control of their trafficking victims. Physical violence, along with intermittent acts of kindness, are used to increase the victim's emotional and physical dependence on the provider.

7. Based on my training and experience, pimps who engage in sex trafficking frequently structure their operations and have a hierarchy with the pimp at the top. Pimps typically are driven by profits and frequently have multiple women who engage in prostitution and sex acts. To assist in the control and manipulation of the victims, the pimps often have a "bottom girl." Of the prostitutes, the bottom girl is at the top of the hierarchy and is usually the individual who has been with the pimp the longest, thereby having demonstrated her loyalty to the pimp, and consistently brings in significant profits to the pimp. Further, the bottom girl is tasked with the responsibility of training, controlling, and overseeing the other victims, and informing the pimp about the other victims' activities. To assert their control over the victims and to maintain their bottom girl status with the pimp, the bottom girls typically engage in manipulation and other similar tactics.

8. Based on my training and experience, pimps generally have rules and forms of discipline and manipulation that are used to maintain order and compliance. For example, pimps often "break in" a newly recruited victim through violence, including rape, and other mistreatment, such as denial of material comforts or contact with other people, including a victim's child. To avoid further violence and mistreatment, or to maintain contact with a family member or child, the victim complies with the pimp's demands. Pimps respond to rule violations in various ways, including physical violence, isolation, confiscation of possessions, intimidation tactics, and psychological and emotional abuse.

9. Further, given the manipulation and violence subjected by the pimps and bottom girls, in addition to encounters with law enforcement for prostitution arrests, victims commonly fail to give an accurate account of the facts because of their fear of the pimps and because of their distrust for law enforcement. Based on my experience and training, it is common for victims to make false statements about certain aspects of their case, until they feel that they can trust law enforcement.

10. The information in this affidavit is based upon my own knowledge, records furnished to me in my official capacity and information provided by other law enforcement officials. This affidavit does not contain every material fact that I have learned during the course of this investigation and is intended to show only that there is sufficient probable cause for the criminal complaint.

## APPLICABLE LAW GOVERNING SEX TRAFFICKING OF CHILDREN

11. Title 18 U.S.C. §1591 provides:

    (a)    Whoever knowingly—

        (1)    in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person;

. . .

        knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act;

. . . .

    (c)    In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had no attained the age of 18 years.

3

# STATEMENT OF PROBABLE CAUSE

12. Several minor and adult victims have been identified as a part of this large-scale ongoing investigation. For the purposes of this complaint, only those pertinent to Clarence Christopher CHAMBERS will be listed in the below probable cause.

## Case Development

13. On Monday May 10, 2021, I became involved in the investigation of several Houston area gang members involved in the sex trafficking of minors to including Clarence Christopher CHAMBERS. The following information was made known to me by Detective Melanie Jones and other officers from the Houston Police Department.

14. On October 04, 2019, at 1301 hours, Officer A. Denaro and Officer H. Scott, with the Houston Police Department were dispatched to 1510 Jensen Dr. Houston, TX. (HISD DAEP Secondary School) for a human trafficking/delayed report call.

   **1. School Interview**

15. On that day, officers received information regarding Minor Victim 1 (MV1). MV1 made an outcry statement of engaging in sexual conduct for a fee under the direction of a gang member to school officials at Houston ISD Secondary DEAP.

16. Officers spoke to the school psychologist and a school teacher. The two made statements to the officers regarding receiving MV1's outcry of human trafficking earlier that day. The psychologist stated she met with MV1 to have a counseling session and MV1 made outcry statements about engaging in prostitution. MV1 said that she was recruited by a pimp named "Chris" at a VIP party in Irvington Village, located in Houston, TX. MV1 told the psychologist only pimps and younger girls were there. MV1 told the psychologist she came to school and recruited other girls [for Chris]. MV1 said she was making $400-$500 a week giving most of the money to "Chris".

17. On that same day the case was assigned to Detective Melanie Jones with Houston Police Department Vice Unit. Detective Jones reviewed the officer's reports and statements from school officials and gathered several associated police reports involving MV1 and three other possible juvenile victims.

18. On October 14, 2019, Detective Jones spoke to the school psychologist who stated that MV1 told her and a teacher that she had been prostituting on Bissonnet for the past few months. MV1 went on to clarify that she had run away from home and was having

sex for money and being "pimped" by a guy with social media handle "herschelwood_crazzichris".

### 2. Forensic Interview of MV1

19. On October 23, 2019, Detective Jones observed a forensic interview of MV1 conducted at the Children's Assessment Center. MV1 described having been trafficked by a pimp she called "Chris" or "Crazy Chris." MV1 later clarified that "Chris'" real name is Clarence CHAMBERS. MV1 said she knew this because she saw a county email on his phone that contained court date information that named him as having a charge for "driving an unauthorized vehicle".

20. MV1 said from January 2019 to July 2019, she would constantly run away from home to her friend's house. MV1 stated that on July 14th or 15th, 2019, she got on the Metro and went to a friend's house. She said that she and 3 other minors went to a foam party at a warehouse. MV1 stated that she and her friends did not want to return home, so at approximately 0000 hours, they just started walking down the street. MV1 said that as they were walking down the street, "Chris" pulled up in a vehicle alongside them and offered them a ride. She described "Chris" as being someone that wants "you to feel like you're the only one."

21. MV1 said that "Chris" asked if they wanted to make money and took them to Bissonnet and "told them how to prostitute." MV1 said that she only saw one "john" at a time. CHAMBERS instructed MV1 to keep walking and don't talk to police and not to talk to other pimps. He told her to watch out for undercover police officers and that she would be able to identify them, because they won't touch themselves or their license plates will be different. MV1 said that she did not have a set quota, because there were slow nights "when tricks wouldn't come."

22. When asked if she had ever had intercourse with "Chris," MV1 responded that she had vaginal sex with him in the car about 4 times. She said she did not have sex with him that often, because he was having sex with "everybody." MV1 told Ms. Holcomb that MV1 told CHAMBERS she was 17 years old.

23. MV1 stated that she engaged in prostitution under the management of "Chris" from approximately July 14 or 15, 2019 through September 02, 2019. MV1 said that during that time, she had sexual intercourse with men for various fees and gave that money to "Chris,"

who transported her between hotels and the Bissonnet track (area in Houston, Texas known for prostitution).

24. When walking the Bissonnet track, MV1 said that she and the other juvenile prostitutes would carry condoms and baby wipes in a fanny pack. When engaging in prostitution in a room, she would clean herself with soap. She clarified that after acts that occurred in the car, she would use baby wipes. MV1 said that they walked the track and got into cars with strangers and had sex for money, giving the money to "Chris".

25. MV1 also stated that CHAMBERS posted advertisements on a website that she did not know the name of. She stated she knew this, because men would contact her, calling her "Slimm." MV1 said that people used textnow on CHAMBERS' phone to respond to the ads, and CHAMBERS would set up the dates. She said she could identify the postings because they would often text "Chris" writing "Hey 'Slimm', referring to the title of the advertisement, obtained by law enforcement, picturing MV1 as "sexysliimmm." She said that she then contacted them on her phone that CHAMBERS provided for her.

26. MV1 said that "Chris" paid cash for the phone via his friend at BOOST Mobile near Bissonnet.

27. During the interview, MV1 was shown an illicit advertisement of which Detective Jones found on Listcrawler. MV1 identified the first advertisement as herself that was posted by "Chris." The narrative was copied and put above her photographs. CHAMBERS' text now number is also listed. MV1 also said that another minor victim was posted, and you can see a portion of "Chris'" tattoo in the video. During the course of this investigation Agents discovered a MegaPersonal ad coming back to a cellular device registered to CHAMBERS, utilizing the same number listed on the ad identified by MV1. This particular ad has a photo of CHAMBERS with the title caption "goldmine." The narrative states "idont post my dick nd shit on his ho to many faggots but ido know how to ful nd fo sho know how to wat pussy iaint no ten inch r no 9 inchass nigga but itend to handle shit".

28. MV1 said dates were arranged by CHAMBERS on his phone and he would relay the man's information to her. MV1 said that she engaged in prostitution on Bissonnet in cars as well in hotels in the area, such as America's Inn, Frontier Inn, and Pearland Inn (motels in Houston, Texas).

29. MV1 said that while she was with CHAMBERS, he provided her with clothes, shoes, and mouth jewelry in exchange for her working [prostituting] for him. She said that she did not always have to walk the street, because she was posting online on websites and on her Instagram account. MV1 said that videos of her with Chris and another minor were posted on Instagram.

30. Later that day, MV1 identified CHAMBERS, as "Chris," the individual who was trafficking her via a photo lineup she was shown by HPD Detective N. Murillo.

31. Based on the information delineated above, I respectfully submit that there is probable cause to believe that Clarence Christopher CHAMBERS committed the offense of Sex Trafficking of Children Title 18 U.S.C. § 1591(a)(1), (b)(2) and (c), in the Southern District of Texas.

Respectfully submitted,

Juanae S. Johnson
Special Agent
United States Department of Homeland Security
Homeland Security Investigations

Subscribed and sworn telephonically on May 21, 2021, at in Houston, Texas.

Hon. Dena Hanovice Palermo
United States Magistrate Judge